UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>ANDREW RICARDO GUERRERO,<br><br>Debtor. | Case No. 24-40612-NGH<br><br>Chapter 13 |

## MEMORANDUM OF DECISION

On October 31, 2024, Andrew Guerrero ("Debtor") filed a chapter 13 plan (the "Plan"). Doc. No. 28. The chapter 13 trustee, Kathleen McCallister ("Trustee"), filed an objection to confirmation of Debtor's Plan based on her assertion that the Plan fails to comply with the projected disposable income requirements of § 1325(b)(1)(B).[1] Doc. No. 36. Specifically, the parties dispute whether Debtor is required to turn over all of Debtor's net income tax refunds beyond the 36-month applicable commitment period ("ACP"). For the reasons explained below, the Court holds that a below-median debtor is not required to turn over tax refunds beyond the 36th month of the Plan.

## BACKGROUND[2]

Debtor proposes a 58-month plan that provides plan payments of $900 for 18 months and $1,186 for 40 months. Doc. No. 28. The Plan proposes to pay unsecured

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101-1532. Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

[2] The parties stipulated to the relevant facts. Doc. No. 44.

MEMORANDUM OF DECISION - 1

creditors between 4.13% and 4.3% of their allowed claims. Debtor's current monthly income is $3,603.17, or $43,238.04 annually, and Debtor has a household size of one. In Idaho, the median income for a household of one is $68,781. Thus, Debtor's income is below the state median, and the ACP under § 1325(b)(4) is 3 years. Paragraph 2.3 of the Plan provides, in part, "[d]uring the Applicable Commitment Period, debtor(s) will turn over to trustee all net income tax refunds."[3] The Plan does not provide for the turnover of tax refunds after the ACP expires.

Trustee asserts the Plan may not be confirmed because, by not providing for turnover of tax refunds received after the first 36 months, the Plan fails to comply with § 1325(b).[4]

**ANALYSIS**

Section 1325 governs confirmation of a chapter 13 plan. Except as provided in subsection (b), a court must confirm a plan that meets the requirements set forth in subsection (a). If the trustee or the holder of an allowed unsecured claim objects to confirmation, as is the case here, the plan must also satisfy § 1325(b) to be eligible for confirmation. Under § 1325(b)(1),

> [T]he court may not approve the plan unless, as of the effective date of the plan—

---

[3] As required by Local Bankruptcy Rule 2002-5(b), Debtor used this Court's standard chapter 13 plan, and the quoted language is found in that form.

[4] Based on Trustee's brief, the Court understood her argument to be based on lack of adequate cause to extend a below-median debtor's plan under § 1322(d). *See* Doc. No. 43. However, at a hearing on February 4, 2025, Trustee clarified her position on the issue and conceded there was sufficient cause to extend Debtor's Plan.

MEMORANDUM OF DECISION - 2

>    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
>    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Section 1325(b)(1)(B) is the provision at issue in this case.

It is Trustee's position that because Debtor proposes a 58-month plan, he must demonstrate he is applying all disposable income received in the 58-month term to make payments to unsecured creditors. Debtor disagrees, asserting that § 1325(b) does not require all projected disposable income to be contributed beyond the ACP.

### A.     Confirmation of a chapter 13 plan

To be eligible for confirmation, § 1325(a)(1) requires the Plan comply "with the provisions of this chapter and with the other applicable provisions of this title." The 1984 addition of § 1325(b) resolved the "ongoing dispute regarding whether there should be a minimum level of payments in chapter 13, other than that set by the section 1325(a)(4) best-interests-of-creditors test." 8 *Collier on Bankruptcy* ¶ 1325.11 (16th ed. 2024) (footnotes omitted). *See also Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1128-29 (9th Cir. 2013) (discussing enactment of § 1325(b)). Thus, "[a]side from any payments to secured creditors, the monetary requirements of a plan generally are informed by the liquidation analysis found in § 1325(a)(4), and the debtor's projected disposable income determined under § 1325(b)." *In re Johnson*, 614 B.R. 80, 88-89 (Bankr. D. Alaska 2020).

MEMORANDUM OF DECISION - 3

Depending on their financial circumstances, some debtors may need to utilize more than their projected disposable income to satisfy the requirements of § 1325(a). Other debtors, however, may be able to propose a plan that satisfies the § 1325(a) requirements using only a portion of their disposable income. This may be the case if liquidation would result in little to no payment on unsecured claims. Section 1325(b) therefore allows certain unsecured creditors or the trustee to require a debtor to apply all projected disposable income toward payments to unsecured creditors under the plan during the ACP.[5] In some cases, this may result in a greater distribution to unsecured creditors than what they would receive under § 1325(a) alone. Even if a debtor has little to no disposable income initially, the minimum repayment term established by § 1325(b) also ensures "unsecured creditors have a mechanism for seeking increased . . . payments if a debtor's financial circumstances improve unexpectedly." *Danielson v. Flores (In re Flores)*, 735 F.3d 855, 860 (9th Cir. 2013).

### B.    Trustee's argument

As noted, Trustee argues that § 1325(b) requires Debtor to commit all disposable income received throughout the life of the plan. In determining the requirements of § 1325(b), "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *In re Sisk*, 962 F.3d 1133, 1145 (9th Cir. 2020) (quoting *Engine*

---

[5] Among other amendments, BAPCPA introduced the phrase "ACP" and tied it to a debtor's income. Pre-BAPCPA, upon objection, the minimum repayment period of all projected disposable income was three years for all debtors regardless of income.

MEMORANDUM OF DECISION - 4

*Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004)). Courts "must enforce plain and unambiguous statutory language according to its terms." *Id.* (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). Statutory provisions are read "in their context and with a view to their place in the overall statutory scheme." *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Courts are "not at liberty to 'alter the balance struck by statute' when interpreting the Code." *Id.* (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017)).

Section 1322(d) establishes a maximum term of a chapter 13 plan and, only if the plan is objected to, does § 1325(b) establish a minimum term within which the debtor must contribute all the debtor's projected disposable income. Trustee appears to argue that courts should look to the maximum duration permitted under § 1322(d) to determine the minimum period within which debtors must commit all projected disposable income in order to overcome an objection under § 1325(b).[6] However, this is inconsistent with the text of § 1325(b)(1)(B), which states that a debtor must apply all projected disposable income *received during the ACP*. Paragraph (4) defines ACP for a below-median debtor as "3 years," without reference to § 1322(d) or a plan extended for cause.

Put another way, the ACP is determined by statute according to the debtor's income, not by the length of a plan. *See In re Pasley*, 507 B.R. 312, 319 (Bankr. E.D.

---

[6] To be sure, it would not be unusual for the ACP and the plan period to be the same length. Indeed, for an above-median debtor who does not propose to pay unsecured creditors in full, the maximum duration of a plan under § 1322(d) and the ACP under § 1325(b) is five years. But that does not make the ACP and the length of the plan one in the same.

MEMORANDUM OF DECISION - 5

Cal. 2014) (rejecting trustee's argument that confirmation of a below-median debtor's 60-month plan established a new ACP under § 1325(b)). Adopting Trustee's argument would "insert phrases and concepts into the statute that simply are not there." *Saldana v. Bronitsky (In re Saldana)*, 122 F.4th 333, 345 (9th Cir. 2024).

Trustee does not point to anything in the Code or its history that indicates Congress intended § 1325(b) to require below-median debtors who voluntarily extend their plan beyond three years to commit all their disposable income to the repayment of unsecured creditors during the extended period. On the contrary, the Code demonstrates that Congress knows how to expressly require a five-year disposable income commitment from debtors if that is the intent. *See, e.g.*, § 1322(a)(4) (notwithstanding any other provision in § 1322, permitting a plan to provide for less than full payment of certain domestic support obligations "only if the plan provides that all of the debtor's projected disposable income for a 5-year period . . . will be applied to make payments under the plan").

Moreover, the Ninth Circuit has rejected attempts to impose different, more burdensome requirements on a debtor's plan than those set forth in the Code. *See In re Sisk*, 962 F.3d 1133, 1149 (9th Cir. 2020) (citing *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir. 1994)). Despite any claimed unfairness that may result, the Court is not at liberty to alter the balance struck by Congress or judicially amend chapter 13's requirements. "Our task is to apply the text, not to improve upon it." *Id.* (quoting *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989)).

MEMORANDUM OF DECISION - 6

Trustee cites to several cases from other districts in support of her argument. In *In re Rodger*, the bankruptcy court considered whether below-median debtors who extended their plan to 60 months could commit less than all their projected disposable income after the ACP. 423 B.R. 591 (Bankr. D.N.H. 2010). The court observed that §§ 1322 and 1325 set the "maximum and minimum plan term for a below median debtor not paying all unsecured claims in full at three years, absent cause for a longer term." *Id.* at 597. The court determined below-median debtors were required to utilize all of their disposable income throughout the life of the plan because doing so was "the policy judgment implicit in § 1322(d), as modified by § 1325(b), for all chapter 13 plans where unsecured claims are not paid in full."[7] *Id.* at 598.

The court in *In re Cormier* reached the same conclusion. "[D]ebtors who voluntarily seek a plan extension for cause beyond the applicable three-year commitment period must devote all of their disposable income toward the plan for its entire duration." 478 B.R. 88, 98 (Bankr. D. Mass. 2012). The *Cormier* court considered that a contrary holding would "unfairly extend the automatic stay and other protections afforded by the Bankruptcy Code while allowing the Debtors to spend the Excess Funds on items not reasonably necessary for their support and the support of their dependents." *Id.*

Trustee also cites *In re Humes*, 2013 WL 6536947 (Bankr. M.D. Pa. Dec. 13, 2013). However, the court in *Humes* did not reach the question of whether the below-median debtor was required to devote all disposable income received throughout an

---

[7] The court noted that if committing all of their disposable income enabled the debtors to complete their plan early, they could seek further modification. *Id.*

MEMORANDUM OF DECISION - 7

extended plan term because the debtor failed to establish cause to extend his plan.[8]  *Id.* at

*3.  Unlike *Humes*, there is no dispute Debtor has established cause to extend his plan.

      Given the text of § 1325(b) and its context, the Court does not find *Rodger* or

*Cormier* persuasive.  The Court will continue to follow prior decisions from this Court

and others that concluded projected disposable income only needs to be committed

during the ACP.  *See In re Faltz*, 2023 WL 2227446, at *6-7 (Bankr. D. Alaska Feb. 23,

2023) (holding below-median debtor who proposed a five-year plan was required to turn

over annual bonuses when received during the three-year ACP to comply with

§ 1325(b)(1)(B), but there was no similar requirement in year four or five as debtor was

not required to commit all projected disposable income after expiration of the ACP); *In re

Messinger*, 241 B.R. 697, 700 (Bankr. D. Idaho 1999) (holding pre-BAPCPA debtor's

failure to provide for turnover of tax refunds received after 36 months is not an

impediment to confirmation because even though the plan was extended to 60 months,

§ 1325(b) "by its terms does not require commitment of disposable income in months

after the 36th"); *In re Alonso*, 570 B.R. 622, 632-33 (Bankr. D. Idaho 2017) (noting

below-median debtors confirmed 54-month plan provides for turnover of tax refunds

during the ACP and, because the ACP is 36 months, debtors can use tax refunds received

after month 36 "for whatever purpose they choose").

---

[8] The court considered "[t]he purpose for the extension is to allow a debtor to make additional payments into the plan for purposes such as curing arrearages on secured claims, satisfying large priority claims, or increasing dividends to unsecured creditors." *Id.*  The court denied approving an extended period because the debtor was "not proposing to make additional payments—only to take a longer period of time to make the same payments." *Id.*

MEMORANDUM OF DECISION - 8

Because Trustee objected, § 1325(b)(1)(B) requires Debtor's Plan to provide that all projected disposable income received in the ACP will be applied to make payments to unsecured creditors.  Here, the ACP is 36 months pursuant to § 1325(b)(4), and the Plan's statement that tax refunds will be turned over during the ACP satisfies the Code's requirements.  Debtor's decision not to turn over tax refunds beyond the 36th month of the Plan does not require denial of confirmation under § 1325(b).

**CONCLUSION**

Accordingly, the Court will overrule Trustee's objection.  Once the Plan is in a confirmable posture, Trustee and Debtor shall submit a proposed confirmation order consistent with this decision.

DATED:  March 7, 2025



_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 9